CLEVENGER v ALLSTATE INSURANCE COMPANY

Docket No. 93890. Argued May 6, 1993 (Calendar No. 9). Decided
    September 8, 1993.

Clifford W. Clevenger brought an action in tort in the Ingham
    Circuit Court against the Allstate Insurance Company, insurer
    of a vehicle that had been owned by JoAnn R. Williams and
    sold to Douglas C. Preece, for injuries suffered in a collision
    with the vehicle, driven by Preece. The court, James T. Kall-
    man, J., granted summary disposition for the plaintiff, finding
    that Allstate had a duty to defend and indemnify Williams and
    Preece. The Court of Appeals, Hood and McDonald, JJ.
    (Griffin, P.J., dissenting), reversed in an unpublished opinion
    per curiam, finding that Allstate had no duty to defend and in-
    demnify because a bona fide sale of the vehicle had been made
    by Williams to Preece, and thus Williams was relieved by MCL
    257.240; MSA 9.1940 of liability arising from its negligent use
    and could not give Preece permission to drive it. The dissent
    noted that because Williams remained the registrant of the
    vehicle at the time of the accident and was required under the
    no-fault act to insure it, and that the vehicle remained an
    "owned automobile" under the express terms of the policy at
    the time of the accident, coverage was provided (Docket No.
    120223). Clevenger appeals.

In an opinion by Justice Boyle, joined by Chief Justice
    Cavanagh, and Justices Levin, Griffin, and Mallett, the
    Supreme Court held:

Under the facts of the case and the express language of the
    contract, Allstate has a duty to defend and indemnify Williams
    and Preece in the underlying tort action.

1. The no-fault act was intended to afford protection to
    persons suffering injury arising out of the ownership, mainte-
    nance, or use of an automobile, not to the automobile. The
    minimum liability coverage for bodily injury, death, and prop-
    erty damage that the Insurance Code requires an insurer to
    provide an insured extends to all permissive drivers.

2. In this case, under the express language of the policy and
    its definitions of terms, Allstate agreed to defend and indemnify
    Williams as a named insured and Preece as a permissive driver
    for damages arising out of the accident. Nowhere in the policy

is a named insured required to have legal title to the vehicle described in the declarations, the definition of "owned vehicle." Nor is it provided that coverage is terminated when title to the vehicle is transferred. Further, the policy was not canceled until after the accident. Because Williams voluntarily remained the registrant of the vehicle, she must be taken to have complied with the statutory duty to insure it during the brief period she permitted the uninsured purchaser to operate it on a public highway.

Reversed and remanded.

Justice RILEY, dissenting, stated that the policy does not require Allstate to defend or indemnify Preece. The question is whether Preece was an insured under the policy, not whether the automobile was an owned vehicle. Consistent with the ordinary meaning of "own," Williams made a bona fide transfer of ownership, was not an owner of the vehicle, and thus no longer retained the ability to give Preece permission to use it. On the basis of the contract language, Preece was not an insured: he was not a named insured, was not a resident of Williams' household, and did not have or need permission of a named insured to use the vehicle. That a registrant is required to insure a vehicle does not necessarily compel a finding that the registrant's residual liability coverage applies to a new owner. Absent a policy provision of residual liability coverage for a purchaser of a covered vehicle, there is no such coverage.

Justice BRICKLEY took no part in the decision of this case.

*Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.* (by *George T. Sinas* and *David R. Brake*), for the plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *James L. Borin, William J. Brickley,* and *Mark C. Smiley*), for the defendant.

BOYLE, J. In this declaratory action, the issue before us is whether the insurance company's obligations to its insured and the driver of an automobile in a tort action arising out of a head-on collision terminated when the insured assigned the certificate of title to the driver and allowed the purchaser to operate the vehicle with the insured's registration plate, registration, and insurance. We

find that under these facts, the insurance policy remained in effect at the time of the accident. Accordingly, we reverse the decision of the Court of Appeals.

I

On Saturday, August 1, 1987, Douglas Preece and his wife traveled to Dearborn to visit with his aunt and uncle. While they were there, at Preece's request, his aunt, JoAnn Williams, offered to sell her 1977 Pontiac to Preece, who accepted the offer and paid his aunt $100 for the automobile. Williams' signed her name to the certificate of title and gave it to Preece.[1] Because it was late in the day and a Saturday, Preece planned to register the car, get a new registration plate and his own insurance, the following Monday. In her deposition, Williams testified that she did not discuss the registration plate, registration certificate or insurance with Preece, nor did she recall any such discussion in her presence. She simply signed the certificate of title and her husband, whom she assumed would take care of the final details, went outside with Preece. Conversely, Preece testified that because it was the weekend, Mrs. Williams told him that he could drive with her registration plate, registration, and insurance until he could acquire his own on Monday morning when the Secretary of State's office was opened. When Preece left Williams' home, the registration plate was affixed to the Pontiac and the certificates of registration and insurance remained in the glove compartment.

On Preece's drive home from Dearborn to Han-

---

[1] The parties do not argue that the certificate of title was not properly endorsed and that, therefore, ownership did not transfer to Preece.

over, in Jackson County, the radiator of the car malfunctioned requiring that he stop six to eight times to allow the engine to cool down and to add antifreeze. One of the stops was at a friend's home, where Preece consumed a beer. Shortly thereafter, Preece stopped at a party store where he purchased a six-pack of sixteen ounce beer. After drinking two beers, Preece was stopped by a Jackson County police officer because the car had only one operable headlight. After securing Preece's promise not to drink any more beer and to drive directly home, a short distance away, the police officer allowed Preece to continue on his way. A few miles later, a head-on collision between Preece and the plaintiff, Clifford Clevenger, occurred when Preece allegedly crossed over the center line. The accident happened at approximately 2:00 A.M. on Sunday, August 2, 1987.

As a result, Clevenger suffered injuries and received first-party personal injury protection benefits under the no-fault insurance policy covering his vehicle. He later filed a third-party tort claim under MCL 500.3135(1); MSA 24.13135(1)[2] against Preece and Williams for residual liability. Preece had no insurance. Williams insured the car with the Allstate Insurance Company under a no-fault insurance policy. Williams did not cancel the policy until August 6, 1987, four days after the collision, and testified that she did not become aware of the accident until two weeks after it occurred.

The plaintiff filed the instant action seeking a declaratory judgment that Allstate had a duty to defend and indemnify Williams and Preece under Williams' no-fault policy. Clevenger and Allstate

[2] Section 3135(1) provides that a "person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement."

filed cross-motions for summary disposition. The trial court ruled in favor of Clevenger and denied Allstate's motion, finding that it had a duty to defend and indemnify Williams and Preece in the underlying tort action.

Defendant Allstate appealed as of right in the Court of Appeals. In an unpublished per curium opinion decided February 11, 1992 (Docket No. 120223), a divided panel reversed the lower court's grant of Clevenger's motion for summary disposition. The majority ruled that a bona fide sale had occurred and that the vehicle was no longer owned by Williams after she endorsed the certificate of title, received the full purchase price, and delivered the automobile to Preece. It reasoned that because Williams was no longer the owner of the vehicle, she was statutorily relieved of liability arising from any subsequent negligent operation of the vehicle, and, thus, Allstate had no duty to indemnify Williams.[3] The Court also concluded that under the policy itself, Williams, as the former owner, could not give Preece the requisite permission to drive the automobile. Because Mr. Preece was not a "permissive driver" or an "other insured" as defined in Williams' policy, Allstate had no duty to defend or indemnify him.

Judge GRIFFIN dissented. He noted that JoAnn Williams remained the registrant of the motor vehicle and, as such, was required by the no-fault act to insure the vehicle. The dissent noted that, more importantly, the vehicle remained an "owned automobile" according to the express terms of the policy and thus coverage was provided at the time the accident occurred.

We granted leave to appeal. 441 Mich 910 (1993).

---

[3] At oral argument in the Court of Appeals, Allstate conceded that it has a duty to defend its policyholder, JoAnn Williams, in the underlying tort action. It does not argue that issue before this Court.

II

The legislative purpose for enacting the no-fault automobile liability act[4] was to afford protection to persons suffering injury arising out of the ownership, maintenance, or use of an automobile, *Coburn v Fox,* 425 Mich 300, 309; 389 NW2d 424 (1986), and not for the protection of the automobile itself, *Lee v DAIIE,* 412 Mich 505, 509; 315 NW2d 413 (1982).

> Under Michigan's no-fault act, both personal injury protection (PIP) *and residual liability* insurance is now required. Insurance coverage to protect oneself from the costs of injury through PIP benefits and to protect injured third parties through *residual liability* insurance is compulsory. Persons violating the no-fault requirements are subject to a criminal penalty. MCL 500.3102(2); MSA 24.13102(2).
>
> The decision by the Legislature to make *residual liability* coverage compulsory under the no-fault act is critical. Before 1973, motorists purchased insurance to protect themselves. Under the no-fault act, the Legislature requires PIP and liability insurance to protect the members of the public at large from the ravages of automobile accidents.[5] [*Coburn, supra.* Emphasis added.]

Plaintiff argues that Allstate has an obligation to defend and indemnify Williams and Preece in the underlying tort action under its policy because Williams, as the registrant of the car, was required by statute to maintain insurance on the

---

[4] MCL 500.3131 *et seq.;* MSA 24.13131 *et seq.*

[5] In this context, we are not persuaded by Allstate's attempt to distinguish first-party personal injury benefits from residual liability benefits. The Legislature could strike a different balance, but we do not believe that it has done so. As noted by Judge GRIFFIN in his dissent, "[t]here is nothing in the no-fault act that supports such fragmented coverage of statutorily required insurance."

vehicle. In addition, because Williams did not cancel the policy before the accident, according to the express language of the insurance agreement, the policy remained in effect at the time of the collision.

Allstate contends that after August 1, 1987, Williams was no longer the owner of the vehicle. It argues that it need not indemnify her for damages arising out of the accident because the motor vehicle code grants her immunity from liability resulting from Preece's negligent operation of the automobile. Allstate also argues that the policy terminated at the time Williams ceased to be the titled owner of the vehicle. It, therefore, has no contractual duty to defend or indemnify Preece as a "permissive driver" of the vehicle against Clevenger's claim. We address the parties' arguments in inverse order.

A

The Insurance Code requires that a motor vehicle insurer provide its insured with minimum liability coverage for bodily injury, death, and property damage. This coverage must extend to all permissive drivers unless the person is expressly excluded on the face of the policy or the declaration page or certification of insurance. See MCL 500.3009; MSA 24.13009.

Under Williams' policy, Allstate agreed to indemnify and defend the insured for "all damages which the insured shall be legally obligated to pay . . . arising out of the ownership, maintenance or use . . . of the owned automobile . . . ." The persons expressly covered under the policy included the "named insured," and "[a]ny other person with respect to the owned automobile, provided the use thereof is with the permission of the

named insured and within the scope of such permission . . . ." The agreement further defined " 'named insured' " as "the individual named in the declarations, and his spouse if a resident of the same household . . . ." The Williams' policy was issued to James L. Williams and because JoAnn Williams, his spouse, resided within the household, she was also considered a "named insured."

The insurance policy also defined the term " 'owned automobile' " as "the vehicle described in the declarations . . . ." In this case, the vehicle listed on the declaration sheet was the 1977 Pontiac.

Following the express language of the policy and its definitions of terms as used in the contract, the insurer agreed to indemnify and defend the insured, either named or permissive drivers if within the scope of such permission, for all damages that the insured was legally obligated to pay arising out of the ownership, maintenance, or use of the owned automobile, which was listed on the declaration sheet. Therefore, Allstate agreed to defend and indemnify JoAnn Williams (a named insured) and Douglas Preece (a permissive driver) for damages they are legally obligated to pay as a result of the accident arising out of Preece's use of the 1977 Pontiac (the vehicle listed on the declaration sheet) when Williams allowed him to drive the 1977 Pontiac to his home.

Allstate asserts that because Williams assigned the certificate of title to Preece, the vehicle was no longer an "owned vehicle" under the policy. It points to the general conditions section of the contract, which states that "[t]his policy applies only to losses to the automobile, accidents and occurrences, during the policy period . . . [and applies] as respects the owned automobile only while it is owned as stated in the declarations."

This Court has consistently adhered to the general rule of construction applicable to insurance policies that an ambiguous provision in an insurance contract must be construed against the drafting insurer and in favor of the insured. However, if the provision is clear and unambiguous, the terms are to be taken and understood in their plain, ordinary, and popular sense. *Farm Bureau Mutual Ins Co of Michigan v Stark,* 437 Mich 175, 181; 468 NW2d 498 (1991). In *Raska v Farm Bureau Mutual Ins Co of Michigan,* 412 Mich 355, 362; 314 NW2d 440 (1982), we explained:

> A contract is said to be ambiguous when its words may reasonably be understood in different ways.
>
> If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances the contract is ambiguous and should be construed against its drafter and in favor of coverage.

See also *Gorham v Peerless Life Ins Co,* 368 Mich 335, 343; 118 NW2d 306 (1962); *Century Indemnity Co v Schmick,* 351 Mich 622, 626-627; 88 NW2d 622 (1958).

We observe that nowhere in the policy is the promised security conditioned upon the named insured having legal title to the vehicle. As long as the terms and conditions of the contract are adhered to and the policy is not canceled by the insurer or the insured, coverage is afforded to the "owned vehicle," which it defines as the "vehicle described in the declarations." Moreover, we note that Allstate fails to recognize that the general

conditions section, which it relies on above to define the limits of the policy's application, also provides the requisite conditions for canceling the policy:

> The named insured may cancel this policy by *mailing* to Allstate *written notice* stating when *thereafter* such cancellation shall be effective, or by *surrender of the policy* to Allstate or any of its authorized agents and, if so, cancellation shall be *effective at the time of surrender.*[6] [Emphasis added.]

The policy does not state that liability coverage is terminated when title to the vehicle named in the declarations as the "owned vehicle" passes to another person. Although we find the policy's cancellation provision clear and unambiguous as requiring the insured to notify Allstate that the vehicle's insurance coverage should be discontinued, any ambiguity, as argued by Allstate concerning the limits and termination of coverage, must be construed against the insurer. Transfer of the title in this case did not terminate the insurer's liability.

Williams notified Allstate on August 6, 1987, that she was canceling the coverage on the Pontiac because she sold the vehicle listed on the declaration sheet. Allstate removed the automobile from Williams' policy effective August 7, 1987. Because the insurance policy covering the Pontiac was still in effect at the time the accident occurred, August 2, 1987, by the express terms of the policy, Allstate is obligated to defend and indemnify, if necessary, Williams and Preece in the underlying

---

[6] The insurer also retains the right to cancel the policy, subject to chapters 30 and 32 of the Michigan Insurance Code, and by mailing the notice to the insured named in the declarations.

tort action.[7] The rights and obligations of the parties vested at the time of the accident. *Cason v Auto-Owners Ins Co,* 181 Mich App 600, 609; 450 NW2d 6 (1989); *Madar v League General Ins Co,* 152 Mich App 734, 742; 394 NW2d 90 (1986).

B

Alternatively, defendant Allstate argues that, as the seller of a motor vehicle, MCL 257.240; MSA 9.1940 provides Mrs. Williams immunity from damages arising out of the negligent operation of a vehicle after she properly endorsed the certificate of title to Preece. Additionally, because Mrs. Williams was no longer the title holder, she no longer had an "insurable interest" in the automobile. Plaintiff counters that even if Mrs. Williams was not the titled owner of the vehicle, as the registrant, she was statutorily obligated to insure the vehicle.

Our task is to determine the underlying legislative purpose behind the no-fault act by examining various provisions of the act and other relevant statutory provisions, and to harmonize different provisions of the same statute by construing statutes in pari materia to give the fullest effect to each provision. *Parks v DAIIE,* 426 Mich 191, 199; 393 NW2d 833 (1986). We agree with the Court of

---

[7] Contrary to the Court of Appeals reliance on *Allstate Ins Co v Demps,* 133 Mich App 168; 348 NW2d 720 (1984), and *Long v Thunder Bay Mfg Corp,* 86 Mich App 69; 272 NW2d 337 (1978), those cases are distinguishable. In *Demps,* the seller mistakenly failed to remove his registration plate. However, he did cancel the insurance on the vehicle one month after the sale and three weeks before the accident. The Court found that the insurance company had no duty to defend or indemnify the purchaser in the underlying tort suit. In *Long,* the seller also failed to remove the plate upon sale of the vehicle. The dispute did not involve the question of insurance, but, rather, of owner liability under MCL 257.240; MSA 9.1940. The dissent criticized the majority for its failure to recognize and strictly comply with other applicable provisions of the motor vehicle act.

Appeals that, by statute, the owner of a motor vehicle is liable for its negligent operation if it is being driven with the owner's permission, MCL 257.401(1); MSA 9.2101(1), but that the owner is not liable for such negligence subsequent to a bona fide sale of the vehicle, MCL 257.240; MSA 9.1940.[8] We also do not dispute that the motor vehicle act defines "owner," in part, as the person who holds legal title to the motor vehicle. MCL 257.37(b); MSA 9.1837(b). However, the Court failed to acknowledge that at the time of the accident, MCL 500.3101(1); MSA 24.13101(1) provided:[9]

> The owner *or registrant* of a motor vehicle required *to be* registered in this state *shall* maintain security for payment of benefits under personal protection insurance, property protection insurance, and *residual liability insurance. Security shall be in effect continuously during the period of registration of the motor vehicle.* [Emphasis added.]

Moreover, the Legislature imposed criminal sanctions for a registrant's failure to maintain insurance as required by § 3101(1):

---

[8] MCL 257.240; MSA 9.1940, the owner's liability statute provides:

> The owner of a motor vehicle who has made a bona fide sale by transfer of his title or interest and who has delivered possession of such vehicle and the certificate of title thereto properly endorsed to the purchaser or transferee shall not be liable for any damages thereafter resulting from negligent operation of such vehicle by another.

While § 240 affords the seller an affirmative defense to a damage claim arising out of negligence subsequent to the sale, it is not dispositive of the right to indemnification between an insurer and the insured. Failure of the seller to remove the registration plate from the vehicle after its sale does not preclude the application of § 240. *Long,* n 7 *supra* at 70.

[9] We review the applicable provisions of the no-fault act and the motor vehicle code as they existed at the time of the sale of the automobile, August 1, 1987.

An owner *or registrant* of a motor vehicle with respect to which security is required, who operates the motor vehicle or *permits it to be operated upon a public highway in this state without having in full force and effect security* complying with this section or section 3101 or 3103 is guilty of a misdemeanor. Any other person who operates a motor vehicle upon a public highway in the this state with the knowledge that the owner or *registrant* does not have security in full force and effect is guilty of a misdemeanor. A person convicted of a misdemeanor under this section shall be fined not less than $200 nor more than $500, imprisoned for not more than 1 year, or both. [MCL 500.3102(2); MSA 24.13102(2). Emphasis added.]

As pointed out by Judge GRIFFIN in his dissent, the Court has previously determined that the terms "owner" and "registrant," as used in the no-fault act, are not synonymous and represent separate categories of individuals, *Cason, supra* at 606-607; *Allstate Ins Co v Sentry Ins Co,* 191 Mich App 66, 69; 477 NW2d 422 (1991).[10]

Further review of the motor vehicle code reveals that a registration certificate must be carried at all times in the automobile to which it refers, MCL 257.223; MSA 9.1923,[11] and that it is unlawful for a

---

[10] See also MCL 500.3115(1)(a); MSA 24.13115(1)(a), which requires that persons suffering injury while not an occupant of a motor vehicle shall first claim PIP benefits from "[i]nsurers of owners *or registrants* of motor vehicles involved in the accident."

[11] MCL 257.216(*l*); MSA 9.1916(*l*) was amended after the accident in this case by 1988 PA 214, which added:

For 3 days immediately following the date of a properly assigned title from any person other than a vehicle dealer, a registration need not be obtained for a motor vehicle driven or moved upon the highway for the sole purpose of transporting the vehicle in the most direct route from the place of purchase to a place of storage if the driver has in his or her possession the assigned title and a dated bill of sale.

Later, 1992 PA 102 deleted the word "motor" preceding "vehicle

person to drive, or an owner to knowingly permit to be driven, any vehicle which is required to be registered but is not registered, MCL 257.215; MSA 9.1915. Every application for renewal of registration must be accompanied by a valid certificate of insurance. MCL 257.227; MSA 9.1927.

The code also encompasses provisions for situations in which the registered vehicle is sold:

> If the owner of a registered vehicle transfers or assigns the title or interest in the vehicle, the registration plates issued for the vehicle *shall be removed* [transferred to an immediate family member to whom title in the vehicle also is transferred], or retained and preserved by the owner for transfer to another vehicle upon application and payment of the required fees. [MCL 257.233(1); MSA 9.1933(1).]

A vehicle's registration plate cannot be transferred or assigned to a new owner who is not an immediate family member. However, the registration plate may be transferred to *another* vehicle owned by the registrant or may be assigned to an immediate family member, as provided in the act, if the application to do so is filed with the Secretary of State within fifteen days of the transfer or assignment. If the application for transfer or assignment pursuant to § 233 is not made within the required time, the vehicle is considered without registration and the Secretary of State may repossess the registration plate. MCL 257.234; MSA 9.1934. Upon receiving a properly endorsed title, an appli-

driven or moved," and substituted "showing the date of sale" for "and a dated bill of sale."

We interpret this provision as exempting the vehicle from displaying and possessing a valid registration number for a limited purpose and a limited period, after its purchase date. It does not, however, exempt the owner from carrying the requisite no-fault insurance on the vehicle.

cation for transfer of the registration, and the required fees, the Secretary of State will transfer the registration under its registration number to the newly acquired vehicle and issue a new registration certification and certificate of title. MCL 257.237; MSA 9.1937.

The unlawful use of registrations is also discussed in the vehicle code. Except as otherwise provided in the act, a person must not operate, nor shall an owner knowingly permit to be operated upon any highway, a vehicle required to be registered unless there is attached to and displayed on the vehicle a valid registration plate issued for the vehicle. MCL 257.255(1); MSA 9.1955(1). A person also must not lend or permit the use of a registration plate issued to him if the person receiving or using the certificate or plate would not be entitled to its use. MCL 257.256; MSA 9.1956.

Finally, MCL 257.236; MSA 9.1938 provides that when the owner of a registered vehicle dies and ownership passes by operation of law, the registration plate assigned to the vehicle shall be considered a valid registration until the end of the registration year or until ownership of the vehicle is transferred.

We read these provisions of the vehicle code and the no-fault insurance act in pari materia as indicating that an unexpired registration plate affixed to the vehicle serves as presumptive evidence that the vehicle is validly registered with the Secretary of State, and that it carries the statutorily mandated no-fault automobile insurance. It logically follows that to destroy that presumption, the appropriate course of action after the sale of a vehicle is for the seller to remove the registration plate and the certificates of registration and insurance from the automobile. In this case, Mrs. Williams failed to do so. A reasonable inference can

be made that Williams voluntarily remained the insuring registrant of the Pontiac, as evidenced by the testimony and by allowing Preece to take possession and operate the vehicle on a public highway with her plate attached and with her certificates of insurance and registration in the glove compartment. Moreover, Mrs. Williams' failure to retain title to the automobile did not excuse her compliance with any other legislative requirements she may have had under the no-fault insurance act. As the registrant of a vehicle she permitted to be operated upon a public highway, Mrs. Williams was required by the act to provide residual liability insurance on the vehicle under the threat of criminal sanctions, §§ 3101 and 3102. In this limited context, Mrs. Williams' insurable interest was not contingent upon title of ownership to the automobile but, rather, upon personal pecuniary damage created by the no-fault statute itself. Thus, we reject Allstate's argument that Mrs. Williams, as the registrant of the Pontiac, had no "insurable interest" in the vehicle because she was no longer the title holder. As noted by Judge GRIFFIN in his dissent:

> As to the duty to insure, the no-fault statutory provisions at issue have superseded our previous common law. Our no-fault act not only creates new types of insurance, it also establishes new and broader responsibilities to insure. See, generally, *Shavers v Attorney General,* 402 Mich 554; 267 NW2d 72 (1978). The duty of a registrant to maintain statutorily required insurance on a registered vehicle is one of the new responsibilities created by the no-fault act.[12]

In short, because she voluntarily remained the insuring registrant of the automobile, Mrs. Wil-

---

12 See also *Lee, supra* at 515; *Madar, supra* at 736-741.

liams must be taken to have complied with the compulsory insurance statute whether she intended to or not. Our conclusion is supported by the overriding, strong public policy and the Legislature's mandate that vehicles not be operated on Michigan's highways without personal protection insurance, property protection insurance, and residual liability insurance.

### III

We conclude that, under the unique facts of this case, Allstate has a duty to defend and indemnify, if necessary, Williams and Preece in the underlying tort action on the basis of the express language of its contract with the insured. As registrant of the automobile, Williams, intentionally or not, complied with the no-fault statute and insured the vehicle as the registrant of the vehicle during the brief period she permitted the uninsured purchaser to operate it on a public highway.

Accordingly, we reverse the decision of the Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion.

CAVANAGH, C.J., and LEVIN, GRIFFIN, and MALLETT, JJ., concurred with BOYLE, J.

RILEY, J. (*dissenting*). I agree with the conclusion of the majority that the no-fault insurance policy between Williams and Allstate remained in effect at the time of the accident involving plaintiff and Preece. No policy provision provided for cancellation upon transfer of the vehicle, and the policy requirements for cancellation were not satisfied by Williams until after the accident. The existence of a policy between Williams and Allstate, however,

does not determine the issue whether the policy provides coverage for Preece, the vehicle's new owner. Because I do not believe that the policy requires Allstate to defend or indemnify Mr. Preece, I respectfully dissent.

I

The no-fault insurance policy between Allstate and Williams provides that payment be made "for an insured" for all damages that "the insured shall be legally obligated to pay because of . . . bodily injury sustained by any person . . . arising out of the ownership, maintenance or use . . . of the owned automobile or a non-owned automobile." The crux of coverage is whether Mr. Preece is "an insured," not whether the automobile is an "owned automobile" under the general definitions of the policy. Even assuming that the automobile continued to be an "owned automobile" because it was described in the declarations, if Mr. Preece is not considered "an insured," the policy does not apply to his use of the vehicle.

With respect to the "owned vehicle," the policy defines persons who are insured under the residual liability provision as the named insured, a resident of the named insured's household, or any permissive user within the scope of that permission. I am persuaded that when a person, here Williams, makes a bona fide transfer of ownership to another, Preece, the seller no longer retains the ability to give permission to use the vehicle. Plaintiff argues that "owned automobile" has a distinct meaning as defined by the policy, therefore the policy still covers the sold vehicle. Plaintiff then argues that because the automobile is considered "owned," Williams may give permission to use it. I do not believe that "owned" should be given two

distinct meanings. The "owned automobile" is the one described in the declarations, it does not connote the ordinary meaning of "own:" "To have a good legal title; to hold as property; to have a legal or rightful title to; to have; to possess." Black's Law Dictionary (6th ed), p 1105. Upon the sale to Preece, Williams ceded title and possession of the vehicle. Upon the sale, Preece no longer required, and Williams could not grant, permission to use the vehicle.

The difference between a permissive driver and a transferee is also apparent from the risk of liability retained by the transferor. As noted by the majority, *ante* at 657, an owner may be held liable for the negligent driving of a permissive user. If the vehicle is sold, however, the former owner is immune from tort liability. MCL 257.240; MSA 9.1940. An owner might therefore sell the vehicle to someone to whom she would not give permission if ownership were retained.

On the basis of the contract language, I would find that Preece is not an insured, because he is not a named insured, a resident of the Williams' household, and he did not have or need permission of a named insured to use the vehicle. The terms of the policy therefore do not require Allstate to indemnify or defend Preece in any lawsuit arising out of the use of the owned automobile.

II

Moreover, I do not believe that a different result is required by statute. The Insurance Code requires an owner or registrant of a motor vehicle to maintain residual liability insurance, and operation of a vehicle without such security is a misde-

meanor.[1] That a registrant is required to insure
the registered vehicle does not necessarily compel
a finding that the registrant's residual liability
coverage applies to a new owner. Although case
authority provides for coverage of a registrant's
PIP insurance regardless of ownership, I disagree
with the majority that residual liability coverage
is also required. Cases finding PIP coverage rely
primarily on statutory sections that are applicable
only to PIP benefits, and the no-fault act does not
provide similar coverage and priority rules for
residual liability insurers.[2]

In *Lee v DAIIE*, 412 Mich 505; 315 NW2d 413
(1982), this Court held that an insured may be
entitled to PIP benefits under his own policy even if
he was injured in an accident involving a vehicle
not required to be registered in Michigan. After
discussing the legislative purpose of the no-fault
act, the Court found that MCL 500.3114; MSA
24.13114 and MCL 500.3115; MSA 24.13115 re-
quire an injured person's personal no-fault insurer
to stand primarily liable for PIP benefits when the
person is involved in a motor vehicle accident.
Sections 3114 and 3115 regulate PIP benefits only,

---

[1] MCL 500.3101; MSA 24.13101 and MCL 500.3102; MSA 24.13102.

[2] Most statutory provisions in the no-fault act specifically apply only
to PIP benefits. See MCL 500.3105; MSA 24.13105 (PIP coverage for
bodily injury arising out of the ownership, operation, maintenance, or
use of a motor vehicle as a motor vehicle; due without regard to
fault); MCL 500.3107; MSA 24.13107 (allowable expenses for PIP
benefits); MCL 500.3108; MSA 24.13108 (survivor's loss, PIP benefits);
MCL 500.3109; MSA 24.13109 (deductions from PIP benefits for gov-
ernmental benefits); MCL 500.3109a; MSA 24.13109(1) (coördination of
PIP benefits with other health and accident coverage on the insured);
MCL 500.3111; MSA 24.13111 (PIP benefits for out-of-state accidents);
MCL 500.3112; MSA 24.13112 (payees of PIP benefits); MCL 500.3113;
MSA 24.13113 (persons not entitled to PIP benefits); MCL 500.3114;
MSA 24.13114 (persons entitled to PIP benefits); MCL 500.3115; MSA
24.13115 (priority of PIP providers); MCL 500.3116; MSA 24.13116
(reimbursement and indemnification among PIP insurers, and tort
claims); MCL 500.3142; MSA 24.13142 (time limits for PIP payments);
MCL 500.3172; MSA 24.13172 (assigned claims plan for persons
entitled to claim PIP benefits).

identifying persons entitled thereto and the priority of insurers.

Several decisions of the Court of Appeals similarly hold that an injured party may recover PIP benefits pursuant to the no-fault policy of a seller who has made a valid transfer of ownership. In *Madar v League General Ins Co,* 152 Mich App 734; 394 NW2d 90 (1986), the seller transferred the vehicle before the expiration of his no-fault insurance policy.[3] The Court characterized PIP benefits as being "in the nature of personal accident policies which are independent of the insured's ownership of an automobile." *Id.* at 742. Following *Madar,* the Court of Appeals, in *Cason v Auto-Owners Ins Co,* 181 Mich App 600; 450 NW2d 6 (1989), determined that, absent a higher priority insurer, the insurer of the registrant of the vehicle that injured plaintiff was liable for payment of PIP benefits.

> While liability insurance coverage and motor vehicle damage insurance coverage are based upon ownership or maintenance or use of the covered automobile, PIP benefits are not conditioned on the ownership of an insured automobile. [*Id.* at 608.][4]

These decisions and the specific no-fault provisions highlight the distinction between the statutory treatment of PIP coverage and other types of coverage. I would find no statutorily mandated residual liability coverage where the insurance policy does

[3] It should be noted that in *Madar* the issue of registration did not arise. The Court of Appeals determined the insurance PIP coverage was applicable on the basis that the policy had not been canceled, despite the sale of the insured vehicle and the transfer of the registration.

[4] See also *Allstate Ins Co v Sentry Ins Co,* 191 Mich App 66; 477 NW2d 422 (1991), in which the Court determined that because the insured's registration had expired, PIP coverage was not applicable under MCL 500.3115(1); MSA 24.13115(1).

not provide such coverage for a purchaser of the covered vehicle.

## III

The terms of the insurance policy in effect between Williams and Allstate do not require the provision of residual liability benefits to Preece. In the absence of such policy coverage, I am not persuaded that the no-fault act requires provision of these benefits by Allstate. I would affirm the decision of the Court of Appeals, finding that Allstate is not required to defend or indemnify Preece in the underlying tort action involving plaintiff.

BRICKLEY, J., took no part in the decision of this case.