PROGRESSIVE NORTHERN INSURANCE COMPANY, Appellant–Intervenor,

v.

CONSOLIDATED INSURANCE COMPANY, Appellee–Intervenor,

v.

Michael R. RASNER, Plaintiff,

v.

Lawrence A. SIMPSON, Defendant.

No. 67A05–9507–CV–258.

Court of Appeals of Indiana.

Nov. 26, 1996.

Keith A. Kinney, Elizabeth H. Knotts, Hill Fulwider McDowell Funk & Matthews, Indianapolis, for Appellant–Intervenor.

Michael E. Simmons, Edward F. Harney, Jr., Humes Smith Geddes Green & Simmons, Indianapolis, for Appellee–Intervenor.

## OPINION

SHARPNACK, Chief Judge.

Progressive Northern Insurance Company ("Progressive") appeals the denial of its motion for summary judgment and the entry of summary judgment in favor of Consolidated Insurance Company ("Consolidated"). This dispute between these two liability insurance carriers arose from an auto accident. Their exposure in this case depends on whether Consolidated is bound to provide liability coverage to the driver of one of the automobiles involved in the accident. On appeal, Progressive raises one issue for review which we restate as whether the obligation of an insurer to provide liability coverage with respect to the operation of an automobile described in a policy issued to the owner of the automobile terminates when the owner sells and transfers possession of the automobile to another. We affirm.

### Facts

On March 6, 1992, Consolidated issued an insurance policy to Jerry and Dawn Collett for their 1979 Dodge Aspen. The policy period extended through June 6, 1992. In May of 1992, Jerry entered into an oral contract with Lawrence Simpson in which Simpson would perform roofing repairs on the Colletts' house in exchange for $300 and the Dodge. On May 25, 1992, after Simpson had worked for about four days on the Colletts' roof, his truck broke down on their driveway. Thereafter, Simpson began driving the Dodge, but the Colletts did not transfer the certificate of title to him.

On May 29, 1992, Simpson was driving the Dodge when he collided with a truck driven by Michael Rasner. Initially, Consolidated represented Simpson and attempted to settle Rasner's claim. After the parties were unable to reach a settlement, Rasner filed a personal injury action against Simpson on April 28, 1993. Soon after, Consolidated retained counsel to file an answer for Simpson.

However, on January 4, 1994, Consolidated moved to intervene in Rasner's action and to file a cross-complaint for declaratory judgment, which was granted. On June 17, 1994, Consolidated moved for summary judgment on its cross-complaint alleging that it had no duty to defend or indemnify Simpson because he had purchased the Dodge from the Colletts. Consolidated maintained that the Colletts' policy did not cover Simpson because legal title had transferred to Simpson prior to the accident.

Soon thereafter, Progressive, Rasner's uninsured motorist carrier, moved to intervene in Consolidated's cross-complaint, which was granted. Progressive then moved for summary judgment alleging that under the terms of the Colletts' policy, Consolidated had a duty to defend and indemnify Simpson. On February 15, 1995, the trial court granted summary judgment in favor of Consolidated and denied Progressive's motion for summary judgment. Progressive now appeals these determinations.

### Standard of Review

When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court. *Ayres v. Indian Heights Volunteer Fire Dep't*, 493 N.E.2d 1229, 1234 (Ind.1986). "The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law." *Id.* Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 318 (Ind.Ct.App. 1991).

### Discussion

The sole issue raised for our review is whether the liability coverage of the Colletts'

automobile insurance policy terminated when the vehicle was sold and transferred to Simpson. At the outset, we note that Progressive does not dispute that the Colletts sold the Dodge to Simpson prior to the accident. Therefore, we will assume for the purposes of our review that Simpson was the owner of the Dodge at the time of the accident.[1]

Progressive argues that the Colletts' automobile insurance policy expressly requires Consolidated to cover Simpson, even after the Colletts sold the Dodge. Progressive relies upon the policy's liability coverage which provides that Consolidated would "defend or settle" any personal injury action for which the "insured" became legally responsible. Record, p. 45. The policy defines "insured" as:

"1. You or any 'family member' for the ownership, maintenance or use of any auto or trailer.

2. Any person using 'your covered auto.'"

Record. p. 45. Further, the policy defines "your covered auto" as "[a]ny vehicle shown in the Declarations." Record, p. 44. The Dodge is the only vehicle listed in the declarations.

Progressive maintains that the clear, unambiguous language of the Colletts' policy qualifies Simpson as an "insured." Essentially, Progressive argues that Simpson satisfies the definition of "any person using 'your covered auto'" because he was driving the Dodge at the time of the accident. Specifically, Progressive asserts:

"Under the express language of the policy and its definitions, Consolidated agreed to defend either the named insured or others driving the covered auto listed in the declarations. Thus, Consolidated agreed to defend Simpson for damages he is legally obligated to pay as a result of the accident arising out of Simpson's use of the Dodge Aspen. This case is similar to a permis-

sive user situation which would clearly be covered under the same sections of the policy."

Appellant's brief, p. 9.[2]

Although Progressive frames its argument in terms of strict contract interpretation, we find that such an analysis is not dispositive. Rather, the resolution of the issue presented turns upon whether the Colletts maintained an insurable interest in the Dodge after it was sold.

■ To maintain a valid insurance policy, the insured must have an insurable interest in the property. *Erie–Haven, Inc. v. Tippmann Refrigeration Constr.*, 486 N.E.2d 646, 649–650 (Ind.Ct.App.1985). Generally, when insuring against loss, an insurable interest in property exists when the possessor of the interest benefits from the property's existence or would suffer from its destruction. *Property Owners Ins. Co. v. Hack,* 559 N.E.2d 396, 399 (Ind.Ct.App.1990). It is not essential, however, for the possessor of the interest to hold the title to the property. *United Farm Bureau Mut. Ins. Co. v. Blanton,* 457 N.E.2d 609, 611 (Ind.Ct.App.1983).

■ The public policy underlying the insurable interest requirement is to prevent insureds from using their coverage for illegitimate purposes. *Prince v. Royal Indem. Co.,* 541 F.2d 646, 649 (7th Cir.1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540. When insuring against loss, an insured who has no interest in the property would have nothing to lose and everything to gain by the loss of such property. *United Fire & Casualty Co. v. Reeder,* 9 F.3d 15, 17 (5th Cir. 1993).

However, when a court speaks of insurable interest in the context of an automobile liability policy, it is not the same interest which is used in referring to an insurance policy against loss. *See United Services Automo-*

---

1. We note that the record indicates a factual dispute concerning ownership of the Dodge. While such an issue could preclude a summary judgment, we are limited to addressing only those issues raised by the parties. Because no factual issues are in dispute on appeal, we will resolve the issue presented as a matter of law. *See Ayres,* 493 N.E.2d at 1234.

2. We note that Progressive does not develop any argument on the theory that Consolidated was liable because Simpson was a permissive user of the Dodge at the time of the accident. Again, we are limited to addressing only those issues raised by the parties.

*bile Ass'n v. Howe,* 208 F.Supp. 683, 685 (D.Minn.1962), *appeal dismissed,* 322 F.2d 476, *reh'g denied.* Because liability coverage merely indemnifies the insured to the extent that the insured is held liable, there is less risk that the liability policy will be used for illegitimate purposes, as compared to a policy against loss. *Reeder,* 9 F.3d at 17.

In the context of liability policies, an insurable interest is more readily explained as follows:

"The insurable interest in such cases is to be found in the interest the insured has in the safety of those persons who may maintain, or in the freedom from damage of property which may become the basis of, suits against him in case of injury or destruction. The interest does not depend upon whether the insured has a legal or equitable interest in the property, but upon *whether he may be charged at law or in equity with the liability against which the insurance is taken out.*"

43 Am.Jur. 2D *Insurance* § 1002 (1982) (emphasis added).

"Since motor vehicle liability insurance ordinarily covers legal liability for injury to person or property of others resulting from ownership, maintenance, or use of a motor vehicle, an insurable interest may exist apart from ownership, or complete ownership, *where the circumstances are such that insured may be legally responsible for damages resulting from its use.*"

44 C.J.S. Insurance § 250 (1993) (emphasis added).

■ As a rule, to establish an insurable interest for liability coverage, only the insured's legal accountability for accident or loss must be shown. *Reeder,* 9 F.3d at 17; *see Ohio Farmers Ins. Co. v. Lantz,* 246 F.2d 182, 185 (7th Cir.1957), *cert. denied,* 355 U.S. 883, 78 S.Ct. 151, 2 L.Ed.2d 113, *reh'g denied.* Therefore, liability insurance must only be issued in instances where the insured could be held liable. *Id.* Accordingly, when an insured loses ownership and possession of the vehicle, his insurable interest in it ceases with respect to liability to third persons. *Allstate Ins. Co. v. Smith,* 442 F.Supp. 89, 92 (E.D.Okl.1977).

■ Here, there is no dispute that the Colletts sold their Dodge to Simpson. Thereafter, Simpson was involved in an accident with a third party, Rasner. At the time of this accident, the Colletts no longer had ownership or possession of the Dodge. Accordingly, the Colletts were not legally accountable to Rasner for Simpson's actions while driving the Dodge and, therefore, had no insurable interest in the vehicle. *See id.*

Lastly, we address Progressive's reliance on *Clevenger v. Allstate Ins. Co.,* 443 Mich. 646, 505 N.W.2d 553 (1993). While Progressive contends this case is "very instructive," we find it to be inapplicable to our analysis. In *Clevenger,* the Michigan supreme court addressed whether an insurer's obligation terminated when the insured transferred title to the vehicle. *Id.* 505 N.W.2d at 553. The supreme court held that pursuant to Michigan's no-fault statute, the insured maintained an insurable interest. *Id.* 505 N.W.2d at 560. Specifically, the supreme court stated:

"... Mrs. Williams' insurable interest was not contingent upon title of ownership to the automobile but, rather, upon personal pecuniary damage created by the no-fault statute itself. Thus, we reject Allstate's argument that Mrs. Williams, as the registrant of the Pontiac, had no 'insurable interest' in the vehicle because she was no longer the title holder. As noted by Judge Griffin in his dissent:

As to the duty to insure, the no-fault statutory provision at issue have superseded our previous common law. Our no-fault act not only creates new types of insurance, it also establishes new and broader responsibilities to insure. The duty of a registrant to maintain statutorily required insurance on a registered vehicle is one of the new responsibilities created by the no-fault act.

In short, because she voluntarily remained the insuring registrant to the automobile, Mrs. Williams must be taken to have complied with the compulsory insurance statute whether she intended to or not."

*Id.* 505 N.W.2d at 560–561 (citations omitted).

Unlike Michigan, Indiana does not have a no-fault insurance statute. While Indiana has statutes governing uninsured and underinsured motorist coverages, these statutes have not superseded our common law relating to insurable interests. *See* Ind.Code § 27–7–5 *et seq.* Accordingly, we find *Clevenger* to be inapplicable to our analysis.

In conclusion, the liability coverage for the Colletts' automobile insurance policy terminated when they sold the vehicle. Therefore, we hold that the trial court properly granted summary judgment in favor of Consolidated and properly denied Progressive's motion for summary judgment.

For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED.

BAKER and DARDEN, JJ., concur.