*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ST. JOHN HOSPITAL & MEDICAL CENTER,

       Plaintiff,

and

CLAUDIA AVILA,

       Intervening Plaintiff,

v

NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY,

       Defendant/Cross-Plaintiff-Appellee,

and

HOME-OWNERS INSURANCE COMPANY,

       Defendant/Cross-Defendant-
       Appellant.

UNPUBLISHED
June 10, 2021

No. 349958
Wayne Circuit Court
LC No. 17-005301-NF

Before: K. F. KELLY, P.J., and SHAPIRO and SWARTZLE, JJ.

PER CURIAM.

In this dispute regarding first-party personal protection insurance benefits under the no-fault act, MCL 500.3101 *et seq*., defendant/cross-defendant Home-Owners Insurance Company appeals as of right the trial court's judgment after a jury trial in favor of defendant/cross-plaintiff Nationwide Mutual Fire Insurance Company. In addition, Home-Owners appeals the trial court's earlier denial of its motion for summary disposition. As explained below, we reverse and remand for entry of a judgment of no cause of action in favor of Home-Owners. Accordingly, we do not reach the question whether the trial court earlier erred in denying summary disposition.

## I. BACKGROUND

The following background is taken from the jury trial. Silvia Guzman testified at trial; Eduardo Martinez was deposed and testimony from that deposition was read into evidence at trial.

In January 2015, Guzman purchased a Jeep Cherokee. She obtained title to the vehicle and acquired no-fault coverage through her insurer, Home-Owners. On October 20, 2015, Guzman sold the vehicle to Martinez for $500. Guzman testified that Martinez signed the assignment of title on that day; Martinez testified that he did not sign it. Both individuals agreed, however, that Martinez became the owner of the subject vehicle that day, he took possession of it, and he left with the title documents. Martinez did not apply for title to the vehicle with the Secretary of State, did not register it in his name, and did not acquire no-fault insurance coverage. Guzman allowed her registration of the vehicle to lapse and removed the vehicle from her policy with Home-Owners.

Over a year later, Claudia Avila was driving the Jeep Cherokee and Martinez was in the passenger seat. They were involved in a head-on collision, and Avila suffered significant injuries. She was taken to St. John Hospital and Medical Center for treatment of her injuries. Given that neither Avila nor Martinez had no-fault insurance, Avila and St. John Hospital sought to have Avila's medical expenses assigned to a no-fault insurer via the Michigan Assigned Claims Plan (MACP). When the MACP delayed in assigning the claims to an insurer, St. John Hospital filed this lawsuit. As the lawsuit progressed, the MACP assigned the case to Nationwide, which paid all of the benefits being sought by Avila and St. John Hospital, resulting in their dismissal from the case. Nationwide, however, filed a cross-complaint against Home-Owners, alleging that Guzman never properly assigned legal title of the vehicle to Martinez and, as a result, Guzman remained the vehicle's owner. Consequently, Nationwide alleged that Home-Owners was an insurer of higher priority under the no-fault act.

Home-Owners moved for summary disposition under MCR 2.116(C)(10), asserting that title transferred from Guzman to Martinez on the date of sale. Nationwide argued that there were two factual disputes for trial. First, it argued that Guzman's attempt to transfer title to Martinez was not successful under MCL 257.233(9) if he did not sign the assignment of title, leaving Guzman as the titleholder of the vehicle. Second, it argued that Guzman also had to comply with MCL 257.240(2), which required her to accompany Martinez to the Secretary of State branch office or retain record proof of the sale for at least 18 months. The trial court agreed that factual disputes existed that had to be resolved by a jury, and it denied the motion for summary disposition.

Before the trial began, Home-Owners argued that the first factual dispute identified by Nationwide was dispositive in this case because MCL 257.233(9) codified the effective date of a transfer of title and the only factual issue concerned if and when Martinez signed the assignment of title. Nationwide disagreed, insisting that Guzman had to comply with both MCL 257.233(9) and MCL 257.240(2) to transfer title of the vehicle to Martinez. The trial court agreed with Nationwide and determined that the jury would be asked (1) whether Martinez signed the assignment of title before the collision took place, and (2) whether Guzman complied with MCL 257.240(2). If either question was answered in the negative, Nationwide would prevail.

At the conclusion of the trial, the jury found that Martinez had signed the assignment of title before the collision occurred, but also that Guzman did not comply with MCL 257.240(2). Specifically, the jury returned the following verdict form:

**VERDICT FORM**

QUESTION NO. 1: Did Silvia Guzman sell the 2000 Jeep to a purchaser, sign the assignment of title to the purchaser, and the purchaser signed the assignment of title all before November 28, 2016?

Answer: Yes (yes or no)

QUESTION NO. 2: Did Silvia Guzman either:

    a. Accompany the purchaser of the 2000 Jeep to a secretary of state branch office to assure that the title of the 2000 Jeep was transferred;

    OR

    b. Maintain a record of the sale for not less than 18 months. ("Record of the sale" means either a photocopy of the reassigned title or a form or document that includes the name, address, driver license number, and signature of the person to whom the Jeep was sold and the purchase price and date of sale of the vehicle.")

Answer: No (yes or no)              Signed,

Despite Home-Owners's argument that the jury's affirmative answer to Question No. 1 was determinative, the trial court entered judgment in favor of Nationwide for $139,994.52.

This appeal followed.

## II. ANALYSIS

The question at the center of this appeal is whether Home-Owners (as the no-fault insurer of Guzman) or Nationwide (as the assignee of the MACP) is the highest priority insurer for the collision involving the Jeep Cherokee. This question in turn comes down to whether Home-Owners is anywhere in the line of priority, because Nationwide is the insurer of last resort under the MACP. If Home-Owners falls under one of the priority rules of our no-fault laws, then it is liable for the benefits at issue here; if Home-Owners falls outside of the priority rules, then Nationwide is liable for the benefits.

We begin by observing several undisputed matters. Neither Avila nor Martinez had no-fault insurance on the Jeep Cherokee. Similarly, Guzman did not have no-fault insurance on the

Jeep Cherokee, though she did have no-fault insurance with Home-Owners on another vehicle. It is further undisputed that the priority provision applicable in this case is MCL 500.3114(4) as it existed at the time of the collision. The statute provided in relevant part:

> (4) . . . a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the vehicle occupied.

If this provision is not applicable because there is no owner or registrant of the vehicle who had insurance, then the injured person "may obtain benefits through the [MACP], which serves as the insurer of last priority." *Titan Ins Co v American Country Ins Co*, 312 Mich App 291, 298; 876 NW2d 853 (2015). "[A]n assigned claims insurer has both the authority and the duty to enforce any available rights to indemnity or reimbursement that could have been pursued by claimants against third parties." *Allstate Ins Co v State Farm Mut Auto Ins Co*, 321 Mich App 543, 555; 909 NW2d 495 (2017) (cleaned up). "The term 'third parties,' as used in MCL 500.3175, includes insurers that were liable for no-fault benefits that were paid by an assigned insurer." *Id.* at 555. Nationwide, as the assignee of the MACP, is entitled to seek reimbursement from a higher priority no-fault insurer, if one exists.

Given this background and statutory framework, it is clear that the only way that Home-Owners could be in the line of priority is if, pursuant to MCL 500.3114(4)(a), Guzman is determined to be an owner of the Jeep Cherokee at the time of the collision. The relevant no-fault provision defined the term "owner" as follows:

> (k) "Owner" means any of the following:
>
> > (*i*) A person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days.
> >
> > (*ii*) A person renting a motorcycle or having the use of a motorcycle under a lease for a period that is greater than 30 days, or otherwise for a period that is greater than 30 consecutive days. A person who borrows a motorcycle for a period that is less than 30 consecutive days with the consent of the owner is not an owner under this subparagraph.
> >
> > (*iii*) A person that holds the legal title to a motor vehicle or motorcycle, other than a person engaged in the business of leasing motor vehicles or motorcycles that is the lessor of a motor vehicle or motorcycle under a lease that provides for the use of the motor vehicle or motorcycle by the lessee for a period that is greater than 30 days.

> (*iv*) A person that has the immediate right of possession of a motor vehicle or motorcycle under an installment sale contract. [MCL 500.3101(2)(k), as amended by 2014 PA 492.[1]]

The parties agree that only the first clause of MCL 500.3101(2)(k)(*iii*) is relevant here, because Guzman would be considered an "owner" of the Jeep Cherokee if she held legal title to the vehicle at the time of the collision.

To determine whether Guzman held legal title to the Jeep Cherokee at the time of the collision, we must consider how legal title is transferred from a seller to a purchaser. Thus, we look to the Michigan Vehicle Code (MVC), MCL 257.1 *et seq*. Indeed, our Supreme Court has held that portions of the no-fault act and the MVC related to transfers of ownership and registration must be read in pari marteria. *Clevenger v Allstate Ins Co*, 443 Mich 646, 660; 505 NW2d 553 (1993).

According to the MVC, when selling a motor vehicle, there are several actions a seller must take to transfer title to a buyer. MCL 257.233(8) provides the following guidance on how to transfer title to a motor vehicle:

> The owner shall indorse on the certificate of title as required by the secretary of state an assignment of the title with warranty of title in the form printed on the certificate with a statement of all security interests in the vehicle or in accessories on the vehicle and deliver or cause the certificate to be mailed or delivered to the purchaser or transferee at the time of the delivery to the purchaser or transferee of the vehicle. The certificate shall show the payment or satisfaction of any security interest as shown on the original title.

Further requirements for transferring title can be found at MCL 257.233a, including disclosure of odometer readings, transfer date, seller's name and address, buyer's name and address, and identification of the vehicle.

There is no dispute between the parties regarding MCL 257.233(8) or MCL 257.233a. Instead, the parties disagree on the effective date of transfer, which is addressed by MCL 257.233(9). This statute provides:

> Upon the delivery of a motor vehicle and the transfer, sale, or assignment of the title or interest in a motor vehicle by a person, including a dealer, the effective date of the transfer of title or interest in the vehicle is the date of signature on either the application for title or the assignment of the certificate of title by the purchaser, transferee, or assignee.

---

[1] Although the numbering and lettering of the statute has been amended several times since the time of the collision, the substantive language of the definition of the term "owner" has not changed. The current version of the statute defines the term "owner" in MCL 500.3101(3)(*l*).

In *Perry v Golling Chrysler Plymouth Jeep, Inc*, 477 Mich 62, 63; 729 NW2d 500 (2007), our Supreme Court considered a former version of MCL 257.233(9):

> Upon the delivery of a motor vehicle and the transfer, sale, or assignment of the title or interest in a motor vehicle by a person, including a dealer, the effective date of the transfer of title or interest in the vehicle shall be the *date of execution* of either the application for title or the assignment of the certificate of title. [Emphasis added.]

The Court concluded in *Perry* that the date of execution was the date when the parties signed the transfer of title. The Court further explained "that 'execution' is complete at signing and thus at that moment title transfers to the new owner." *Perry*, 477 Mich at 64. The Legislature subsequently clarified the statute in response to *Perry*, changing "date of execution" to the "date of signature . . . by the purchaser, transferee, or assignee."

In answering Question No. 1, the jury determined that (1) Guzman sold the jeep to "a purchaser," i.e., Martinez, (2) Guzman signed the assignment of title to Martinez, and (3) Martinez "signed the assignment of title all before" the date of the collision. Under MCL 257.233(9) and *Perry*, 477 Mich at 63-64, title to the Jeep Cherokee transferred from Guzman to Martinez before the collision, and Guzman did not hold legal title to the vehicle and was, therefore, not an "owner" under MCL 500.3101(2)(k)(*iii*). Consequently, Home-Owners was not the insurer of an owner of the subject vehicle, and under former MCL 500.3114(4), it was not a higher priority insurer for Avila's injuries. The trial court should have entered a judgment of no cause of action in favor of Home-Owners because of the jury's answer to Question No. 1.

Nationwide argued before the trial court and now on appeal, however, that even if Guzman and Martinez complied with MCL 257.233(9), they also needed to satisfy MCL 257.240 to effectuate transfer of title. This latter provision states:

> (1) The owner of a motor vehicle who has made a bona fide sale by transfer of his or her title or interest and who has delivered possession of the vehicle and the certificate of title to that vehicle properly endorsed to the purchaser or transferee is not liable for any damages or a violation of law that subsequently results from the use or ownership of the vehicle by another, if the owner, other than a licensed dealer, satisfies the conditions prescribed under subsection (2).

> (2) The owner of a motor vehicle, other than a licensed dealer, shall satisfy 1 of the following conditions:

> > (a) Accompany the purchaser of the vehicle to a secretary of state branch office to assure that the title of the vehicle being sold is transferred.

> > (b) Maintain a record of the sale for not less than 18 months. As used in this subdivision, "record of the sale" means either a photocopy of the reassigned title or a form or document that includes the name,

address, driver license number, and signature of the person to whom the vehicle is sold and the purchase price and date of sale of the vehicle.

(3) A person who violates subsection (2) is responsible for a civil infraction and shall be ordered to pay a civil fine of $15.00.

(4) A person who violates subsection (2) is presumed to be the last titled owner and to be liable for towing fees and daily storage fees for an abandoned motor vehicle. [*Id.*]

Based on the language in MCL 257.240(1) and (2), Nationwide argues that Guzman had to either accompany Martinez to the Secretary of State branch office or maintain documentary proof of the transfer of the vehicle for 18 months. The jury concluded that Guzman and Martinez did not do either of these, and, therefore, Guzman was "presumed to be the last titled owner" under MCL 257.240(4).

Considering the plain language of the statute, however, it is clear that the Legislature intended MCL 257.240 to apply in situations where a court was considering whether a vehicle's owner has tort liability. This can be seen by the reference in MCL 257.240(1) to liability "for any damages or a violation of law," and not, as the case may be, liability of the owner's no-fault insurer to pay benefits as the insurer of an owner. Indeed, MCL 257.233(9) and *Perry*, 477 Mich at 63-64, are clear that title transfers on the date the purchaser signs the relevant documents. Further, our Supreme Court has explained that MCL 257.240 "affords the seller an affirmative defense to a damage claim arising out of negligence after the sale," but "it is not dispositive of the right to indemnification between an insurer and the insured." *Clevenger*, 443 Mich at 657 n 8. Thus, Nationwide's attempted reliance on MCL 257.240 to suggest that a proper transfer of title under MCL 257.233(9) could be undone by Guzman's failure to accompany Martinez to the Secretary of State branch office or retain proof of purchase for 18 months is not persuasive.

Moreover, there is nothing in the statute to suggest that the presumption of ownership created by MCL 257.240(4) is an absolute, irrefutable presumption. To read the provision as Nationwide suggests would mean that the presumption of ownership would be created when a seller fails to comply with MCL 257.240(2), while at the same time, the only way to rebut this presumption of ownership would be to show that the seller complied with MCL 257.240(2). We should avoid, if possible, reading a statute as creating a logical impossibility.

With Question No. 1, the jury was asked to determine whether Guzman and Martinez performed all of the steps necessary to transfer title under MCL 257.233(9), and the jury answered in the affirmative. With Question No. 2, the jury was asked to determine whether Guzman and Martinez took additional steps to avoid the application of an evidentiary presumption that Guzman retained ownership, and the jury answered in the negative. But with its answer to Question No. 1, the jury made its answer to Question No. 2 irrelevant, especially given that this is a dispute about which no-fault insurer has higher priority and not a negligence claim for damages.

In sum, the jury's finding that, before the collision, Guzman sold the Jeep Cherokee to Martinez and the parties signed the assignment of title was determinative in this case. With their

respective signings, Guzman legally transferred title of the vehicle to Martinez, and Guzman no longer held legal title, MCL 257.233(9); Guzman was no longer an "owner" under the no-fault act, former MCL 500.3101(2)(k)(*iii*); Home-Owners was not an insurer of an owner of the vehicle at the time of the collision; and Home-Owners was not a higher priority insurer than Nationwide for purposes of Avila's injuries, former MCL 500.3114(4). The trial court erred when it interpreted the jury's verdict form in a way contrary to this analysis.

Finally, given our resolution of this dispute based on the factual findings made by the jury, we do not reach Home-Owners' claim that the trial court erred by denying its motion for summary disposition prior to trial.

## III. CONCLUSION

Affirmed in part, reversed in part, and remanded for entry of a judgment of no cause of action in favor of Home-Owners. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Douglas B. Shapiro
/s/ Brock A. Swartzle