AMERISURE INSURANCE COMPANY v
AUTO-OWNERS INSURANCE COMPANY

Docket Nos. 244777, 244778, 244779, 244780. Submitted March 2, 2004,
    at Grand Rapids. Decided March 9, 2004, approved for publication
    May 11, 2004, at 9:10 A.M. Leave to appeal denied, 471 Mich ___ .
  In the Ottawa Circuit Court, before consolidation, Grand Valley
    Health Center, Spectrum Health, and Hope Network Rehabilita-
    tion Services brought separate actions against Amerisure Insur-
    ance Company to recover the costs of services provided to Michael
    Anthony for injuries he sustained in an automobile accident.
    Michael Anthony, through his guardian and conservator, Diana L.
    Smith, joined Grand Valley, Spectrum, and Hope Network in their
    actions against Amerisure, which had been assigned by the Michi-
    gan Assigned Claims Facility to address the claims for personal
    injury protection (PIP) benefits. After Amerisure determined that
    Auto-Owners Insurance Company, under a no-fault policy issued
    to Whitworth-Borta Corporation, insured Jeremy Withworth, the
    driver of the automobile involved in the accident and in which
    Anthony was a passenger, Amerisure filed a third-party complaint
    against Auto-Owners for reimbursement of any recovery obtained
    by Grand Valley, Spectrum, Hope Network, and Anthony. Ameri-
    sure claimed that Auto-Owners was higher in priority of liability
    for any PIP benefits. On its third-party complaint, Amerisure filed
    a partial motion for summary disposition and Auto-Owners filed a
    cross-motion for summary disposition. Amerisure claimed that the
    Auto-Owners' no-fault policy required it to pay benefits for An-
    thony. Conversely, Auto-Owners argued that it was not the higher
    priority insurer liable for any benefits. The court, Edward R. Post.,
    J., granted Auto-Owners' motion for summary disposition after it
    found that the named insured, the Whitworth-Borta Corporation,
    did not have an insurable interest in the automobile and that the
    policy did not provide coverage to the driver or the occupants of the
    automobile. A jury trial on remaining issues resulted in a judg-
    ment against Amerisure. Subsequently, Amerisure filed a claim of
    appeal challenging the court's order granting Auto-Owners' sum-
    mary disposition, the order awarding the plaintiffs penalty inter-
    est, the order denying Amerisure's motion to allow deposit of the
    judgment amount and toll of interest, the order granting the

plaintiffs attorney fees, and the order and judgment on the jury verdict, in particular, the holding that Michael Anthony's injuries were the result of an accident and were not intentional.

The Court of Appeals *held*:

1. Auto-Owners is not liable for PIP benefits. First, MCL 500.3114(4) plainly states that a person injured while an occupant of a motor vehicle and who does not have an insurance policy of his own or in his family shall claim PIP benefits from the insurer of the owner or registrant of the vehicle occupied, or from the insurer of the operator of the vehicle occupied. Jeremy Whitworth, the owner, operator, and registrant of the automobile, did not have insurance coverage provided by Auto-Owners, therefore, Auto-Owners could not be liable for PIP benefits for Anthony. Second, even if the Auto-Owners policy stated that it would pay PIP benefits to an injured person for accidental bodily injury arising out of the use of a motor vehicle, Amerisure's argument that the policy language clearly applied to Anthony's injuries because he was injured in connection with the use of the automobile was untenable in the context of this case—that being that there were no named insureds involved in the accident. To that end, case law makes clear that personal injury protection coverage and its benefits protect the insured rather than the automobile.

2. The court did not err when it denied Amerisure's motion for a new trial or for judgment notwithstanding the verdict. The court did not abuse its discretion when it allowed Anthony to introduce evidence of his intoxication to the jury as one factor for its consideration when determining if he intended to injure himself. The Michigan Supreme Court has established the test for determining intent, for purposes of the no-fault act, as involving both a determination whether a person intended an act that causes injury and the injury itself. It makes logical sense that when the jury focuses on the person's subjective intent, it may consider as one factor that person's level of intoxication as it relates to the person's intention to injure himself.

3. The court properly awarded penalty interest under MCL 500.3142 to Grand Valley, Spectrum, Hope Network, and Anthony. MCL 500.3142 mandates an assessment of penalty interest if an insurer fails to make payment within thirty days of receiving reasonable proof of loss. First, there is no precedent that exempts an insurer assigned by the Michigan Assigned Claims Facility from the provisions of MCL 500.3142. Second, the jury found that Amerisure received reasonable proof of loss when it received an affidavit of the doctor who examined and treated Anthony in the emergency room after he sustained his injuries.

4. The court properly awarded attorney fees under MCL 500.3148(1). The statute authorizes a charge of attorney fees against an insurer if a court finds that the insurer unreasonably refused to pay a claim or unreasonably delayed in making proper payment. Amerisure unreasonably failed to pay because its claims that Anthony was either assaulted or intended to injure himself were not viable, at least as of February 23, 2001. On that date Amerisure received an affidavit from the doctor that treated Anthony in the emergency room. The doctor stated that it was unlikely that Anthony's injuries were caused by an assault. Moreover, Amerisure's adjuster admitted that he had rejected the idea of an assault almost one year earlier. Similarly, there was no credible evidence on which Amerisure could have relied to continue in its assertion that Anthony intentionally injured himself.

5. The circuit court properly denied Amerisure's motion to deposit the judgment with the court and thereby toll the accumulation of judgment interest. Under MCR 2.620, a judgment can be satisfied by payment to the clerk of the court. The circuit court correctly analyzed Amerisure's position, in which it sought to make the payment to toll interest accrual and to appeal the underlying judgment, as an attempt to make a payment with a contingent obligation on the plaintiffs to repay, and that was not a payment at all. In that situation, there was no actual satisfaction of the judgment.

Affirmed.

*Miller, Shpiece & Andrews, P.C.* (by *Ronni Tischler*), for Grand Valley Health and Hope Network.

*Miller, Johnson, Snell & Cummiskey* (by *Stephen R. Ryan*) for Spectrum Health.

*Scholten & Fant* (by *Bruce P. Rissi*) for Michael Anthony.

*Wheeler Upham P.C.* (by *Gary A. Maximiuk*) for Auto-Owners Insurance Company.

*Harvey Kruse* (by *Gary L. Stec* and *Lanae Monera*) for Amerisure Insurance Company.

Before: METER, P.J., and WILDER and BORRELLO, JJ.

PER CURIAM. Amerisure Insurance Company appeals by right from a judgment, entered after a jury trial, mandating that it pay personal injury protection (PIP) benefits for Michael Anthony, who suffered injuries in September 1999 after jumping from a Ford Explorer while another person, Jeremy Whitworth, drove the vehicle. Amerisure argues that the jury's verdict, as well as several pretrial and posttrial orders entered by the trial court, must be reversed. We affirm.

I

Amerisure first argues that the trial court erred in granting partial summary disposition, before trial, to Auto-Owners Insurance Company. We disagree.

At the time Anthony sustained his injuries, neither he nor any member of his household had no-fault automobile insurance. Moreover, the Ford Explorer, while owned by Whitworth and registered in his name, had been insured by Auto-Owners under a policy issued to Whitworth Borta, Incorporated. Whitworth was not a named insured in the Auto-Owners policy.[1] Anthony's sister, believing no insurance policy covered Anthony's injuries, applied to the Michigan Assigned Claims Facility for PIP benefits, and the facility assigned the case to Amerisure.

Amerisure moved for partial summary disposition under MCR 2.116(C)(10), requesting that the trial court hold that Auto-Owners, not Amerisure, would be responsible for paying any available PIP benefits to Anthony. The trial court denied Amerisure's motion and instead granted Auto-Owners' cross-motion for summary disposition, finding that "the named insured,

---

[1] Whitworth was not an employee of Whitworth Borta, but his father was.

Wh[i]tworth-Borta Corporation[,] did not have an insurable interest in the 1991 Ford Explorer. Consequently, no valid policy of insurance existed to cover the driver of the vehicle or its occupants at the time of the accident." The trial court held that Amerisure would be responsible for paying any available PIP benefits to Anthony.

We review de novo a trial court's decision to grant summary disposition. *Spiek v Dep't of Transportation,* 456 Mich 331, 337; 572 NW2d 201 (1998). Under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Ritchie-Gamester v City of Berkley,* 461 Mich 73, 76; 597 NW2d 517 (1999). Summary disposition is appropriate if there is no genuine issue with regard to any material fact. *Id.*

Additionally, we review issues of statutory interpretation de novo. *Roberts v Mecosta Co Gen Hosp,* 466 Mich 57, 62; 642 NW2d 663 (2002). The rules of statutory construction require the courts to give effect to the Legislature's intent. *Institute in Basic Life Principles, Inc v Watersmeet Twp (After Remand),* 217 Mich App 7, 12; 551 NW2d 199 (1996). "This Court should first look to the specific statutory language to determine the intent of the Legislature," which is "presumed to intend the meaning that the statute plainly expresses." *Id.* If the language is clear and unambiguous, "the plain meaning of the statute reflects the legislative intent, and judicial construction is not permitted." *Tryc v Michigan Veterans' Facility,* 451 Mich 129, 135; 545 NW2d 642 (1996). If reasonable minds could differ regarding the meaning of a statute, judicial construction is warranted. *Yaldo v North Pointe Ins Co,* 457 Mich 341, 346; 578 NW2d 274 (1998). A court must not

read into a statute anything "that is not within the manifest intent of the Legislature as gathered from the act itself." *In re S R*, 229 Mich App 310, 314; 581 NW2d 291 (1998).

MCL 500.3114(4) provides that a person who suffers bodily injury while the occupant of a motor vehicle[2] and who has no available insurance policy of his own or in his family shall claim PIP benefits from "[t]he insurer of the owner or registrant of the vehicle occupied[]" or "[t]he insurer of the operator of the vehicle occupied." MCL 500.3114(4)(a) and (b). The owner, registrant, and operator of the Ford Explorer was Whitworth, and he did not have a policy of insurance with Auto-Owners.[3] Accordingly, Anthony could not claim PIP benefits from Auto-Owners by virtue of this plainly worded statute. See *Tryc, supra* at 135.

Amerisure argues that, even if MCL 500.3114(4) is inapplicable, Auto-Owners must provide available PIP benefits to Anthony by virtue of the wording in the Auto-Owners policy. For example, Amerisure points to a section of the policy indicating that Auto-Owners will pay "personal injury protection benefits to or on behalf of an injured person for accidental bodily injury arising out of the . . . use of a motor vehicle . . . ." Amerisure

---

[2] The parties do not dispute that Anthony suffered bodily injury "while an occupant of a motor vehicle." See *id*. At any rate, the language in MCL 500.3115(1), dealing with persons injured while *not* occupants of motor vehicles, is materially identical, for our purposes, to the language in MCL 500.3114(4).

[3] We note that in *Pioneer State Mut Ins Co v Titan Ins Co*, 252 Mich App 330, 336-337 n 7; 652 NW2d 469 (2002), the Court emphasized that MCL 500.3115(1) specifically mentions that the insurer of the *owner* (or registrant or operator) of the motor vehicle involved in the accident is responsible for paying PIP benefits, not the insurer of the *vehicle itself*. Given the materially identical language in MCL 500.3115(1) and MCL 500.3114(4), this reasoning from *Pioneer* applies in the instant case as well.

contends that this language plainly applies to Anthony's injuries because he was injured in connection with the Ford Explorer insured in the Auto-Owners policy. Amerisure's argument is untenable. Indeed, there is simply no authority for the proposition that the insurer of a *vehicle* involved in an accident must pay PIP benefits under the circumstances present in the instant case, when no named insureds were involved in the accident. See, e.g., *Madar v League Gen Ins Co,* 152 Mich App 734, 742-743; 394 NW2d 90 (1986) (PIP coverage applies to the insured person, and not to the motor vehicle).

Amerisure cites *Clevenger v Allstate Ins Co,* 443 Mich 646; 505 NW2d 553 (1993), in support of its argument. In *Clevenger, supra* at 648-649, the plaintiff was injured by a motor vehicle driven by Douglas Preece, who had purchased the vehicle earlier in the day from his aunt, JoAnn Williams. Williams remained the registrant of the vehicle at the time of the accident. *Id.* at 648. The Court ruled that Allstate, Williams's insurer, had to provide indemnification and liability coverage in the plaintiff's lawsuit against Preece. *Id.* at 655-656.

*Clevenger* is not applicable to the instant case. Indeed, *Clevenger* dealt with liability coverage and indemnification, not PIP benefits. *Id.* Moreover, the *Clevenger* Court relied on specific policy provisions that are not identified in the instant Auto-Owners policy. See, e.g., *id.* at 654-655. Additionally, the *Clevenger* Court emphasized that Williams remained the registrant of the vehicle in question[4] and specifically stated that Allstate had a duty to defend and indemnify "under the unique facts of this case[.]" *Id.* at 662. *Clevenger* does not compel us to reverse the trial court's grant of partial summary disposition to Auto-Owners.

---

[4] As noted earlier, the named insured in the Auto-Owners policy was not the registrant of the Ford Explorer.

Nor do two additional cases cited by Amerisure, *Madar, supra,* and *Universal Underwriters Group v Allstate Ins Co,* 246 Mich App 713; 635 NW2d 52 (2001), compel reversal. In *Madar,* the plaintiff's decedent, Albert Madar, was killed by an automobile insured by the defendant, League General Insurance Company. *Madar, supra* at 736. Before his death, Madar had sold an automobile insured by the Auto Club Insurance Association (AAA). He was the named insured in the policy, and it had not been canceled at the time of his death. *Id.* at 736, 742. The Court held that AAA was the party responsible for paying PIP benefits associated with Madar's death, despite his having sold the automobile, because the AAA policy insured Madar's health and well-being, not his specific automobile. *Id.* at 738-739, 742-743. The Court stated that PIP coverage "protects the person, not the motor vehicle." *Id.* at 742-743.

Far from supporting Amerisure's position, *Madar* supports the opposite position, given its holding that PIP coverage applies to the insured person, and not to the motor vehicle. Additionally, *Universal Underwriters* does not support Amerisure's position. In *Universal Underwriters,* a woman was injured while driving a dealer's vehicle that she did not yet own. *Universal Underwriters, supra* at 715-717. However, she had obtained insurance from Allstate at the time of the accident. *Id.* at 730. The Court held that Allstate was responsible for paying PIP benefits to the woman even though she did not own the vehicle that caused her injuries. *Id.*

*Universal Underwriters* simply reaffirmed that PIP benefits apply to the person, and not to the vehicle; it does not support Amerisure's argument here.[5] The trial

---

[5] Amerisure also cites, but does not discuss, *Cason v Auto Owners Ins Co,* 181 Mich App 600; 450 NW2d 6 (1989). We find this case inapplicable

court correctly granted partial summary disposition to Auto-Owners.[6] Although some of the trial court's analysis was incorrect and poorly worded, we will not reverse a court that reaches the right result for incorrect reasons. *Taylor v Laban,* 241 Mich App 449, 458; 616 NW2d 229 (2000).

II

Next, Amerisure argues that the trial court erred in denying its motion for a new trial or judgment notwithstanding the verdict (JNOV).

A main issue at trial was whether Anthony had intended to injure himself when jumping out of the Ford Explorer, because the no-fault act does not cover injuries caused intentionally. See MCL 500.3105. At trial, Anthony argued that the jury should be allowed to consider evidence of his intoxication in making its determination of intent. The court, making an analogy to cases involving mental illness, agreed. Amerisure later argued that the trial court's ruling in this regard constituted an error requiring a new trial or JNOV.

When reviewing a trial court's denial of a motion for JNOV, this Court examines the evidence and all legitimate inferences arising from the evidence in the light most favorable to the nonmoving party. *Attard v Citizens Ins Co of America,* 237 Mich App 311, 321; 602 NW2d 633 (1999). A motion for JNOV should be granted only if there was insufficient evidence presented to

because its outcome relied heavily on the fact that the named insured in the disputed insurance policy remained the registrant of the vehicle involved in the accident—a situation that does not exist in the instant case. *Id.* at 606-608.

[6] The "public policy" and "innocent third party" arguments raised by Amerisure on appeal are without merit in light of the clear inapplicability of the Auto-Owners policy to the injuries in question.

create a jury-triable issue. *Id.* This Court reviews a trial court's decision with regard to a motion for a new trial for an abuse of discretion. *Morinelli v Provident Life & Accident Ins Co,* 242 Mich App 255, 261; 617 NW2d 777 (2000).

As noted in *Miller v Farm Bureau Mut Ins Co,* 218 Mich App 221, 226; 553 NW2d 371 (1996), "[o]ne acts intentionally [for purposes of the no-fault act] if he intended both the act *and* the injury." (Emphasis in original.) "The subjective intent of an actor is the focus of determining whether the actor acted intentionally." *Id.* We conclude that allowing the jury to consider the extent of Anthony's intoxication in determining his subjective intent was proper.

We find persuasive the case of *Collins v Nationwide Life Ins Co,* 409 Mich 271, 277-278; 294 NW2d 194 (1980), in which the Court, considering a life insurance policy, held that

> where an insured dies as the result of an intentional act, such as voluntary intoxication, but did not intend or expect death to result, such death is accidental for the purposes of an accidental death policy as involved herein. In the instant case, although the decedent's introduction of alcohol into his body was intentional, the factfinder must determine whether he intended or expected it to have fatal consequences.

This reasoning makes logical sense in the context of the no-fault act. An injured person acts intentionally under the no-fault act if he intended both the act causing the injury and the injury itself, and the finder of fact must focus on the person's *subjective* intent. *Miller, supra* at 226. The only logical conclusion in light of these principles is that the finder of fact can consider a person's level of intoxication as one factor when deciding whether the person intended to injure himself.

Amerisure cites *Group Ins Co of Michigan v Czopek*, 440 Mich 590; 489 NW2d 444 (1992), as a case supporting its position. *Czopek, supra* at 598-599, concerned an intoxicated man, Arthur Smith, resisting an arrest. The plaintiff insured the home of Smith's parents. *Id.* at 594. The plaintiff argued that Smith's acts were intentional and therefore not covered under the homeowner's policy. See, generally, *id.* at 594, 601. The Court agreed, holding that Smith's actions were "not rendered accidental simply because he happened to be intoxicated." *Id.* at 599. It stated that "[a]n intoxicated person is responsible for his actions, even though he may have voluntarily ingested intoxicating substances" and that "[w]here an insured willingly consumes an intoxicating substance, he may not use that consumption as a defense to the requirement of intent in an insurance policy." *Id.* at 601.

We do not consider *Czopek* binding for purposes of this case. First, the *Czopek* Court emphasized that Smith "admitted that he intended to prevent the arrest." *Id.* at 598. Second, the Court was concerned with whether intoxication could completely negate the admitted intent, not with whether intoxication could be *considered* in determining Smith's intent.[7] See, generally, *id.* at 599, 601. We find *Collins* the more persuasive case.

Amerisure additionally cites the case of *Schultz v Auto-Owners Ins Co*, 212 Mich App 199; 536 NW2d 784 (1995), in support of its argument. *Schultz* concerned a claim for PIP benefits, and the injured person's intent was at issue. *Id.* at 200-201. The Court stated:

---

[7] In the instant case, the jury was asked to consider Anthony's intoxication as one factor in determining his intent and was not told that a finding of intoxication would automatically negate the existence of an intentional act.

Viewing the facts in a light most favorable to plaintiff, the evidence showed that [the plaintiff] quarreled with his girlfriend. He then jumped from a moving van that he was driving. Statements he made before jumping established that he did so either to elicit the girlfriend's sympathy or to arouse feelings of guilt in her. Consequently, plaintiff's intent to cause himself injury can be inferred from the facts. [*Id.* at 201-202.]

The *Schultz* Court then stated, without elaboration but citing *Czopek, supra* at 601, that "the fact that plaintiff claimed to be voluntarily intoxicated at the time of the incident would not vitiate or mitigate his intent." *Schultz, supra* at 202. As with *Czopek*, we find *Schultz* distinguishable. Indeed, a reading of *Schultz* makes clear that the plaintiff's intent was *evident* in that case, and the court held merely that intoxication could not negate this evident intent. Here, Anthony's intent was *not* in fact evident, and the evidence of intoxication was used by the jury as one factor in *determining* Anthony's intent. The trial court did not err in allowing Anthony to make an argument with respect to his level of intoxication.[8] While the court may have erred in essentially equating voluntary intoxication with mental illness, we will not reverse a trial court's decision when it reaches the right result for the wrong reasons. *Taylor, supra* at 458. In light of our resolution of this issue, we similarly find that the court did not abuse its discretion in allowing a witness, Dr. Kerry Lynn Vegter, to testify regarding Anthony's level of intoxication, given the relevance of the witness's testimony.[9]

---

[8] We note that the homeowner's insurance cases cited by Amerisure, which deal with a different "intentional act" standard than that at issue under the no-fault act, are inapposite.

[9] Amerisure makes a brief, additional argument with regard to this witness's testimony. It argues that no foundation was laid for the

Amerisure further argues that the trial court should have granted its motion for a new trial or JNOV because appellees' attorneys made improper attacks during trial against Amerisure and its claims adjuster, Robert Vichinsky. However, Amerisure has waived this argument by failing to cite any authority in support of its position. *Wilson v Taylor,* 457 Mich 232, 243; 577 NW2d 100 (1998). Even if Amerisure had not waived this argument, we would find no basis for reversal. Indeed, the comments did not " 'reflect a studied purpose to inflame or prejudice [the] jury or deflect the jury's attention from the issues involved.' " *Kubisz v Cadillac Gage Textron, Inc,* 236 Mich App 629, 638; 601 NW2d 160 (1999), quoting *Hunt v Freeman,* 217 Mich 92, 95; 550 NW2d 817 (1996). Moreover, the court instructed the jury that the attorneys' statements were not evidence; this instruction served to cure any prejudice arising from the comments. *Tobin v Providence Hosp,* 244 Mich App 626, 641; 624 NW2d 548 (2001).

III

Amerisure next argues that the trial court should not have awarded penalty interest under MCL 500.3142, which mandates assessment of penalty interest if an insurer does not make a payment within thirty days of receiving reasonable proof of loss. Amerisure contends that, as an insurer assigned the claim by the Michigan Assigned Claims Facility (MACF), it should not be subject to MCL 500.3142. Because this issue involves statutory interpretation, we conclude, and the parties agree, that our review of the issue is de novo. *Roberts, supra* at 62.

---

witness's testimony. We do not consider this argument because it has been inadequately briefed. *Wilson v Taylor,* 457 Mich 232, 243; 577 NW2d 100 (1998).

Amerisure's argument is patently without merit. First, as noted by the trial court, the plain language of the statute in no way indicates that the penalty interest provisions should not apply to an insurer assigned a claim by the MACF. Second, in *Lakeland Neurocare Centers v State Farm Mut Ins Co,* 250 Mich App 35, 40, 42-44; 645 NW2d 59 (2002), this Court applied MCL 500.3142 to an MACF-assigned insurer, explained the policy reasons behind the statute, and gave no indication that these policy reasons should not apply in circumstances involving an assigned insurer.

Here, the parties agreed to submit to the jury the issues of whether and when Amerisure received reasonable proof of loss. The jury specifically found that Amerisure received reasonable proof of loss on February 23, 2001, when it received an affidavit from Dr. Vegter, who had examined and treated Anthony in an emergency room after he sustained his injuries.[10] Given this factual situation, the plain wording of MCL 500.3142, and the legal precedent discussed above, no error occurred that required reversal of the award of penalty interest.

IV

Amerisure next argues that the trial court should not have awarded appellees any attorney fees under MCL 500.3148(1), which states, in part, that "the attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." Ameri-

---

[10] In the affidavit, Dr. Vegter expressed her opinion that Anthony's injuries were more consistent with tumbling from a motor vehicle than with having been assaulted (Amerisure had expressed an earlier opinion that the injuries might have been caused by an assault).

sure argues that its refusal to pay was not unreasonable because there were viable issues regarding whether Anthony had been assaulted and regarding whether he suffered his injuries intentionally.

"A trial court's finding of an unreasonable refusal to pay or delay in paying benefits will not be reversed on appeal unless the finding is clearly erroneous." *Attard, supra* at 316-317. Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake occurred. *Massey v Mendell,* 462 Mich 375, 379; 614 NW2d 70 (2000).

The trial court ruled as follows with regard to the issue of reasonableness:

> I am convinced in this case that Amerisure's failure to pay was unreasonable. Amerisure proceeded to trial on this alternative assault and suicide theory based largely on oblique references in hastily prepared contemporaneous notes by police and medical personnel with partial and imperfect knowledge about the events. But certainly by February 23 of 2001 all the facts were known or knowable, and there was in my judgment no evidence to allow a reasonable person to conclude that either one was likely.
>
> Some day when I write my memoirs about my years on the bench I will cite this jury verdict as one displaying both wisdom and intellectual rigor, and I think that this jury verdict was the proper one, and gave every benefit possible to Amerisure in holding that by February 23 of 2001 all facts that Amerisure needed to pay this claim were in their hands.
>
> Instead, Amerisure clung to the slimmest of reeds with this assault and/or suicide theory. Frankly, many of the excuses for not paying this claim offered by Amerisure dissipated on the witness stand at the testimony of their own witnesses, and I agree, as well, that Amerisure never clearly told the plaintiffs why this claim was being de facto denied, even though they refused to call it a denied claim and what proofs were necessary [sic].

It is also very clear to me through the testimony of Mr. Vichinsky that he had made up his mind long ago that this claim was not going to be paid until a jury told him to pay it, and the evidence to the contrary not withstanding.

His testimony was in a word, incredible, and I mean that in both senses in which that word is commonly used.

Amerisure's denial of this claim was based on mere possibility and conjecture. I think that an adjustor in the position of Mr. Vichinsky needs to exercise some objectivity and not be purely adversarial, taking every scrap of evidence and every imaginable inference that can be drawn from that evidence to deny the claim. That is not the role of an insurance adjustor, and he abandoned objectivity in this case and simply wasn't going to pay.

As to the Court's refusal to grant summary disposition. This was a large case involving potentially millions of dollars in which a person's care as an adult was at stake. Don't confuse the grace of the Court in allowing parties to have their day in Court with some sort of decision that the failure to pay was reasonable. In this case Amerisure's failure to pay was unreasonable.[11] But I agree with Mr. Ste[c] that it was unreasonable as of February 23, 2001.

In accordance with its ruling, the court awarded only those fees incurred after February 23, 2001.

Given Amerisure's receipt on February 23, 2001, of Dr. Vegter's affidavit concerning the unlikelihood of an assault having caused Anthony's injuries, Vichinsky's admission that he had rejected the idea of an assault a year before the June 2002 trial, and the conclusion by the police no later than February 2001 that no assault had taken place, the trial court did not clearly err in concluding that Amerisure's failure to pay the claim based on a theory of an assault was unreasonable.

---

[11] The court similarly indicated earlier in the proceedings that its denial of summary disposition would not be dispositive on the issue of attorney fees.

With respect to the theory of intentional injury, Amerisure argues that it had a reasonable basis to deny the claim because it received evidence that Anthony had a history of depression and substance abuse and had been acting angrily before jumping from the vehicle. It also contends that its investigator interviewed Whitworth, the driver of the Ford Explorer, not long after Anthony was injured and that Whitworth told the investigator that Anthony said, "I'm sick of it" and "I'm going to jump" before jumping out of the vehicle. However, Whitworth testified at trial that he did not remember making these statements to the investigator. Moreover, Whitworth testified at his deposition in January 2001 that: (1) Anthony did not state that he intended to injure himself that night; (2) he had never sensed Anthony to be suicidal; and (3) before Anthony jumped out of the vehicle, Anthony said that he was going to jump, said that he had jumped from moving vehicles before, and mentioned something about rolling.

The trial court contemplated all the evidence and chose to reject the testimony of Vichinsky concerning the refusal to pay the claim. In light of all the evidence, including Whitworth's deposition testimony and the evidence of Anthony's intoxication, we simply cannot conclude that the trial court clearly erred in rejecting Amerisure's "intentional injury" theory for refusing to pay the claim. We are not left with a definite and firm conviction that a mistake occurred with respect to the court's award of attorney fees incurred by appellees after February 23, 2001.

V

Finally, Amerisure argues that the trial court erred by failing to allow Amerisure to deposit the judgment

amount with the court and thereby avoid the necessity of paying statutory interest on the judgment. Amerisure argues that the accumulation of interest on the judgment should be tolled from the date it offered to deposit the judgment amount with the court.

This issue involves the interpretation of statutes and court rules, and therefore our review is de novo. *People v Petit,* 466 Mich 624, 627; 648 NW2d 193 (2002); *Roberts, supra* at 62.

Under MCL 600.6013, interest accrues until a judgment is satisfied. Under MCR 2.620, a judgment may be satisfied by "payment to the clerk of the judgment[.]" Amerisure argued below, and argues on appeal, that its tender of payment to the clerk or its deposit of the judgment amount into an interest-bearing account should toll the accumulation of statutory interest. The trial court ruled as follows with regard to this argument:

> I am going to deny the motion for the following reason. Payment with the contingent obligation to repay is not payment at all. Just as when you deposit money with the bank, the bank doesn't book your cash as an asset, but books it as a liability to have to repay that money to you as a liability. And the same would be true for the plaintiffs in this case. If they received funds with the contingent obligation to pay those back, those funds are not payment at all until they are received without obligation to repay.
>
> I think that the plaintiffs are correct. Amerisure has two choices, either satisfy the judgment or post a bond on appeal. The whole purpose of this penalty [sic] interest is to get these payments to the parties who deserve them on a timely basis and further delaying the non-contingent repayment of these obligations is adequate reason for continuing the penalty [sic] interest, and I am going to deny the motion for those reasons.

The trial court's analysis was correct. As noted in *Becker v Halliday,* 218 Mich App 576, 578; 554 NW2d 67 (1996), "a party who accepts satisfaction in whole or in part waives the right to maintain an appeal or seek review of the judgment for error, as long as the appeal or review might result in putting at issue the right to the relief already received." This reasoning applies with equal force to defendants satisfying a judgment as it does to plaintiffs accepting the satisfaction of a judgment. See *Horowitz v Rott,* 235 Mich 369, 372; 209 NW 131 (1926) (satisfaction of a judgment bars appeal). Here, Amerisure's tender of payment was *not* in fact a satisfaction of the judgment because it chose to pursue an appeal. Accordingly, the interest provisions apply.

Affirmed.