# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 17, 2009

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

137189

UNIVERSITY REHABILITATION
ALLIANCE, INC.,
          Plaintiff-Appellee,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,
          Defendant-Appellant.

SC: 137189
COA: 272615
Ingham CC: 05-000537-NF

_____/

On order of the Court, the application for leave to appeal the July 22, 2008 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

CORRIGAN, J. (*dissenting*).

I respectfully dissent from the order denying defendant's application for leave to appeal. I would grant leave to appeal in this no-fault insurance case involving an award of attorney fees. The Court of Appeals majority erroneously concluded that defendant's delay in paying personal protection insurance (PIP) benefits was unreasonable. In my view, the dissenting judge in the Court of Appeals properly articulated the governing legal principles. *Univ Rehabilitation Alliance, Inc v Farm Bureau Gen Ins Co*, 279 Mich App 691, 704-706 (2008).

## I. Factual Background and Procedural History

Defendant's insured suffered serious brain injuries when her boyfriend allegedly pushed her from a moving motor vehicle. The insured's boyfriend was criminally charged for this assault. Defendant, Farm Bureau General Insurance Company, the no-fault insurer, initially refused to pay plaintiff's, University Rehabilitation Alliance, Inc, claim for benefits on the ground that if the insured's injuries resulted from an assault, they are exempt from no-fault coverage under MCL 500.3105(4). Plaintiff filed suit, challenging defendant's initial refusal to pay PIP benefits. After the insured's boyfriend was acquitted of criminal assault, defendant voluntarily paid plaintiff's claim with

interest. Nevertheless, plaintiff asserted that defendant's delay was unreasonable and moved for attorney fees under MCL 500.3148(1). The trial court awarded plaintiff attorney fees. The majority in the Court of Appeals affirmed, while the dissent concluded that defendant's delay in paying PIP benefits was reasonable because binding precedent exempts injuries resulting from an assault in a motor vehicle from no-fault coverage.

## II. Reasonableness under MCL 500.3148(1)

When a no-fault insurer refuses or delays payment of PIP benefits, it has the burden of justifying its refusal or delay under MCL 500.3148(1). *Ross v Auto Club Group*, 481 Mich 1, 11 (2008). "The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Id*. When a reviewing court makes this inquiry, the determinative factor "is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable." *Id*.

Defendant's initial refusal to pay benefits was reasonable. Until defendant learned that the insured's boyfriend had been acquitted of criminal assault, it was legitimately factually uncertain about the true cause of its insured's injury. Relying on authority from this Court, defendant properly believed that PIP benefits were not payable if the insured's injuries arose from a criminal assault. *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214, 225-226 (1998); *Bourne v Farmers Ins Exch*, 449 Mich 193, 198 (1995); *Thornton v Allstate Ins Co*, 425 Mich 643, 659 (1986). In *Ross*, this Court concluded that the defendant's denial of benefits was reasonable because the defendant had "relied on a factually similar Court of Appeals decision to adopt a reasonable position on an issue of first impression." *Id*. at 15. Here, defendant similarly adopted a reasonable position in reliance on analogous precedent. Additionally, defendant relied on this Court's seemingly blanket statement that "assaults occurring in a motor vehicle are not closely related to the transportational function of a motor vehicle." *McKenzie, supra* at 222. I see no appreciable distinction between defendant's position here and that of the defendant in *Ross*. In both cases, the defendants relied on earlier caselaw concerning similar issues to adopt a reasonable position regarding payment of benefits. Indeed, as soon as defendant learned that its insured's boyfriend had been acquitted of criminal assault, it voluntarily paid plaintiff more than $187,908 of benefits and $16,000 of interest. Consequently, defendant's initial refusal to pay was not unreasonable under the circumstances.

Moreover, defendant had a separate legitimate question of statutory interpretation regarding MCL 500.3105.[1] The only competing versions of the events involved

---

[1] MCL 500.3105(1) requires an insurer to pay PIP benefits for any "accidental bodily injury arising out of the [. . .] use of a motor vehicle as a motor vehicle . . . ." MCL 500.3105(4) further provides that:

intentional conduct: Did the boyfriend assault the insured, or did she jump from the moving vehicle? A claimant's bodily injury is accidental "unless suffered intentionally by the injured person or caused intentionally by the claimant." MCL 500.3105(4). In this case, defendant's attempted investigation of the veracity of the insured's claim that her boyfriend had assaulted her was stymied by the ongoing criminal investigation. Defendant could not interview the criminal defendant-boyfriend. Moreover, during his criminal trial, the insured's boyfriend testified that defendant's insured had jumped from the moving vehicle. In contrast, the insured testified that her boyfriend had pushed her. The jury apparently accepted the boyfriend's version of events and acquitted him of all charges. On these facts, the contest is between two versions of "intentional" conduct, and under one version of events, the injuries suffered by the insured were not "accidental" because the insured's injuries were "suffered intentionally . . . or caused intentionally by the claimant." MCL 500.3145(4). If its insured intentionally jumped from the moving vehicle (in what appears to me to be) an apparent suicide attempt, defendant could not have unreasonably delayed in making PIP payments because there was no "accidental" injury. This is a second ground for a determination that the delay in payment reasonable.

### III. Justice Weaver's Consistent Interpretation of MCL 500.3105

This Court recently heard arguments in a case involving the award of no-fault benefits to a fleeing felon aiming a firearm at a pursuing police officer under MCL 500.3105. Although we ultimately denied leave in *Budget Rent-a-Car System, Inc v Detroit*,[2] two of my colleagues issued separate statements expressing divergent interpretations of MCL 500.3105. Justice Markman described the result as "extremely troubling," but nevertheless agreed with this Court and the Court of Appeals that "the law is clear that an insurer is required to pay personal protection insurance benefits for any 'accidental bodily injury arising out of the . . . use of a motor vehicle as a motor vehicle . . . .'"[3] Justice Weaver dissented, explaining that, "[t]he claimant was not entitled to no-fault benefits because his injuries did not arise out of an 'accidental bodily injury' as defined in MCL 500.3105. The injuries sustained by the claimant occurred as a result of the claimant's use of a vehicle rented from the plaintiff for the commission of criminal

---

Bodily injury is accidental as to a person claiming personal protection insurance benefits unless suffered intentionally by the injured person or caused intentionally by the claimant. Even though a person knows that bodily injury is substantially certain to be caused by his act or omission, he does not cause or suffer injury intentionally if he acts or refrains from acting for the purpose of averting injury to property or to any person including himself.

[2] *Budget Rent-a-Car System, Inc v Detroit*, 482 Mich 1098 (2008).

[3] *Budget Rent-a-Car System, supra* at 1098-1099 (Markman, J., concurring).

acts."[4]    Justice Weaver further reasoned that, "[w]hile the claimant may not have intended to be injured, he 'caused' his injuries by intentionally engaging in criminal behavior that put him at risk of injury and in fact resulted in his injuries."[5]   Accordingly, Justice Weaver concluded, "[b]ecause the claimant did not act, or refrain from acting, 'for the purpose of averting injury to . . . any person including himself,' the claimant's injuries were not 'accidental.'  . . .   Any remedy for plaintiff's error in mistakenly paying the claimant no-fault benefits for injury stemming from the claimant's intentional criminal activity must be pursued against the claimant."[6]  My colleagues' differing interpretations of MCL 500.3105 further suggest that a legitimate issue of statutory interpretation indeed existed in this case.

IV.  Additional Relevant Caselaw

Several decisions underscore my conclusion regarding the existence of a legitimate question of statutory interpretation.  In *American Alternative Ins Co, Inc v York*, 470 Mich 28, 32 (2004),[7] the Court held that under MCL 500.3135(3)(1)(a), "courts are to review only whether the defendant intended to cause the harm that resulted." Therefore, even though the evidence revealed that the tortfeasor drove a vehicle while intoxicated and subsequently crashed into an ambulance, none of the evidence supported "a finding that [the tortfeasor] actually intended to collide with the ambulance and cause damage to it. Thus, under the language of the statute, because [the tortfeasor] did not intend to cause damage to the ambulance, he is immune from suit."  *Id*. at 32-33. Similarly, in *Amerisure Ins Co v Auto-Owners Ins Co,* 262 Mich App 10, 19 (2004), the Court of Appeals reasoned, "[a]n injured person acts intentionally under the no-fault act if he intended both the act causing the injury and the injury itself, and the finder of fact must focus on the person's *subjective* intent."  (Emphasis in original.)  Accordingly, the Court of Appeals held that the trial court did not abuse its discretion in considering a person's level of intoxication as one factor when deciding whether he intended to injure himself.  *Id*.[8]

The caselaw concerning the issue of intent in no-fault insurance cases, however, continues to engender a variety of holdings.  In *Schultz v Auto-Owners Ins Co*,

---

[4] *Budget Rent-a-Car System, Inc v Detroit*, *supra* at 1099-1100 (Weaver J. dissenting).

[5] *Id*. at 1100.

[6] *Id*. at 1101.

[7] Except for Justice Markman, who filed a separate concurring opinion, the full Court signed the opinion per curiam issued in *American Alternative Ins Co, Inc. Id.* at 33.

[8] See *Miller v Farm Bureau Mut Ins Co*, 218 Mich App 221, 226 (1996) ("One acts intentionally [for purposes of the no-fault act] if he intended both the act *and* the injury." [emphasis in original].).

212 Mich App 199, 201 (1995), the Court of Appeals affirmed a trial court's decision to grant summary disposition, thereby precluding the claimant from receiving PIP benefits.[9] When faced with factual circumstances markedly similar to the facts in this case, the Court of Appeals explained that

> the evidence showed that [the claimant] quarrelled with his girlfriend. He then jumped from a moving van that he was driving. Statements he made before jumping established that he did so either to elicit the girlfriend's sympathy or to arouse feelings of guilt in her. Consequently, plaintiff's intent to cause himself injury can be inferred from the facts. He did not meet his burden of showing no intent to injure himself when he jumped, and defendant's motion for summary disposition was properly granted.[10]

Unlike the conclusion in *Amerisure,* the *Schultz* Court stated that, "the fact that [the claimant] claimed to be voluntarily intoxicated at the time of the incident would not vitiate or mitigate his intent."[11] Moreover, in *Miller v Farm Bureau Mut Ins Co*, 218 Mich App 221, 225-226 (1996), the Court of Appeals held that the insured's suicide attempt in crashing his vehicle into a tree was intentional and that the insured therefore was not entitled to PIP benefits, even though the insured was suffering from mental illness. Additionally, this Court has held that a driver who was shot while occupying a motor vehicle was not entitled to benefits where shots were fired during the continuation of an argument that had begun before the automobile chase and the involvement of automobiles was incidental under MCL 500.3105(1). *Marzonie v Auto Club Ins Ass'n*, 441 Mich 522, 534 (1992).

Accordingly, because the Court of Appeals erred when it concluded that defendant's initial refusal to pay benefits was unreasonable, I would grant defendant's application for leave to appeal.

MARKMAN, J., joins the statement of CORRIGAN, J.

---

[9] Chief Justice Kelly was a member of the Court of Appeals panel in *Schultz.*

[10] *Schultz, supra* at 201-202.

[11] *Id*. at 202.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 17, 2009

p0414

Clerk